May it please the court, Charles Savilla on behalf of the petitioner Stephen Deck. There is one issue before the court, as the respondent frames it in the first page of its brief, whether the prosecutor's misconduct in closing argument had a substantial and injurious impact or influence on the jury. And we differ on our conclusions in that regard. But I'm here to argue why the record manifests substantial and injurious influence on this jury based on the rebuttal argument of the prosecutor. The rebuttal argument of the prosecutor was to attack and defeat the argument of the defense, which was based on evidence in the record. Obviously, the record goes both way on this issue of what was the intent of the petitioner on February 18th when he went down to meet with Amy, the sting operative. I quoted page 4041, the detailed chat logs and phone calls that support the defense position that he had no intent to do anything that night. But as he's explicitly stated on multiple occasions on the 18th, he was there. It was a meet and greet. He didn't even want to come because he was sick. And she insisted that he come and bring her a piece of pie. The jury heard evidence that your client may have, and that was certainly the prosecution's argument, that your client may have made those statements in the course of this online chatting to build in a defense. And my understanding is that the prosecution really argued in the alternative. That's correct. That the jury could find from the evidence that he intended to do something that night or he intended to do something in the future, right? Correct. Okay. So how do we know that the jury didn't make the by the alternate finding? How do we know which one they found? Well, one hour after the prosecutor made his rebuttal argument, which he said to the jury, now stop right here. This is very important what I'm going to say. And then multiple times he said I do not have to prove that he was going to do anything that night. It could have been the next day, the next week, just sometime in the future. That is clearly wrong and denudes the attempt of its temporal necessity, its element. One hour after he made that statement, of course the defense had no opportunity to rebut that, the jury comes back with a question in which initially they said we'd like that prosecutor's argument re-read. And they scratched that out and they said what about this business about nothing had to happen that night? Could he be convicted based on some act in the future? So clearly this hit a live nerve with the jury because they're asking a question about it. But counsel, a lot of us don't particularly like these cases, but of course this is an AEDPA case. Correct. And the key here under 2254 is you've got to show, to be successful, that the decision of the California Court of Appeals is contrary to or an unreasonable application of clearly established Supreme Court law. Where is your case from the Supreme Court that tracks these facts or anything close to it? Well, it is not necessary to have a case on point as Panetti, which I cite, versus Quarterman says. But I think we've crossed the Rubicon of establishing a denial of the constitutional right. The issue here under Brecht is whether there was a substantial injurious impact from the constitutional violation. Which has been established by the California Court of Appeals. Yes. So you're just looking at harmlessness essentially? Correct. The California Court of Appeal, although it didn't label the issue as constitutional, it didn't even label it as state air. It just said that the argument of the prosecutor denuded the essential element of immediacy out of this. But it concluded that the jury instruction had cured it, right? Erroneously, yes. That it had erroneously cured it? Well, it didn't cure it because... Well, I'm just saying what the state court of appeals said. The state court of appeals said it cured it. So under AEDPA, and we get these cases all the time, as you well know. Under AEDPA, you've got to show that what that court did was an unreasonable application of Supreme Court law. And I'd love you to show me a case that says you're right, but AEDPA does not permit us to correct for errors of state law. Right? Do you agree with that? Yes. Waddington and others. So how can we help you on this? I mean, I know you can make a very... And you're a very able advocate. You told us about what happened with the first jury. Then, of course, what we don't talk about yet is that juror is excused. Somebody got sick. You get a new person in. Right away, they convict them. So there's no confusion there. That's the jury verdict that stands, right? But that's all state law. The question is, is there a Supreme Court case that gets you over this hump? Otherwise, we have to rely on what the State Court of Appeals did, right? Well, we first crossed the Rubicon of whether there's a constitutional error in this argument, and we're past that. There was constitutional error. Well, you're saying there was no due process, right? Or was it lack of due process? Well, when the prosecutor tells the jury you don't have to worry about this element of the offense, that is clearly a denial of a substantial right under the United States Constitution. But? As stated in cases like Donnelly v. Cristoforo and Darden v. Wainwright, where both of them said, if the final argument touches upon and undermines a constitutional right, that is the type of prosecution misconduct that can warrant relief. So you're saying that even though ADPA is not going to help you with a state law violation, and even though the Supreme Court has made it very clear that the jury instructions are important here, you're saying you don't have to find a case that's on point to win your case here. I'm saying I have to give you the doctrine that the Supreme Court cases that establish prosecution misconduct, which so infects a trialist to deny a due process of law. Okay. Is the unreasonable application of a Supreme Court precedent. Now we go to the prejudice component, Brecht v. Abrahamson, which says that if the record reflects that there is substantial injurious impact from this misconduct, which was constitutional in magnitude, there should be a remedy. And in terms of the jury instruction, there are a couple of errors in the analysis of the California Court of Appeal. Number one, it said that the prosecutor's rebuttal argument was isolated. It's clearly not isolated. It goes on four pages in the record where he says this is very important, ladies and gentlemen, and then he specifically attacks the defense argument that there was nothing that was going to happen, a defense that was based on evidence, as we cite in the record. So yes, he did argue the other half of that, that something was going to happen that night. But the defense was that it wasn't going to happen that night. It was supported by ample evidence in the record. So he misstated the element. The jury responded to that. And then there were two days of argument between the lawyers and the judge. And the judge ultimately said the prosecutor's argument is right because the jury instructions do not require anything to happen that night. So the prosecutor played upon the ambiguity of the instruction to say, ladies and gentlemen, nothing has to happen that night. All he has to do is have a plan. And that's what the jury instruction talks about. It talks about a plan, which is general in its scope. And the prosecutor is saying all he had to do is set in motion a plan for an act that could happen a day, a week, or sometime in the indefinite future. That's clearly not the law. But he played upon the weakness of that instruction and gave this jury a way to convict without finding the temporal element of immediacy, which is essential for an attempt to conviction. The court of appeals found that the instructions were proper. And it seems to me that you're agreeing they were proper as far as they went. Is that right? As far as they went. But they were undermined by this argument. And on page ECR 2, page 478 is the operative, well, it's ECR 23, is the operative paragraph where the judge gives the instruction in which four times the word plan is used, putting in action a plan. Well, the prosecutor played on that by saying the plan could be some act in the indefinite future. And that's where the misconduct was and allowed the jury to convict without finding the essential immediacy of action, which the defense argued based on evidence in the record that there was no such plan for immediate action. It was actually more iffy than that. He said if we like each other, then maybe we'll do something in the future. But I'm not feeling well. This is a meet and greet. Do you want to reserve? Time's up? Yeah. Okay. Perhaps I'll have a minute to reply. Good morning. May it please the Court. I'm Kevin Vienna, California Deputy Attorney General here for Respondent. Pardon me. I've got just a little cold. I'm getting over. My opponent assumes that there's a constitutional error. I searched the record to try to find one. I did not see that any court has ever found a constitutional error occurred. I think it's clear that the California Court of Appeals said that the prosecutor made a misstatement of law. Actually, as I looked at it, it looked to me like that involves two sentences and approximately 40 pages of argument. Why is it not a constitutional error? Well, it's a state law. It's not a constitutional error for the very reasons that the district court explained, and that is that what happened in those two sentences did not infect the entire matter with unfairness. That's the Darden standard. And the reason it didn't infect the- But then it wasn't the California Court of Appeals found no error at all? No. The California state law, because they're involved also in supervising the conduct of trials, has a lesser standard for prosecutor misconduct or what they call more frequently prosecutor error, and that is any deceptive method of persuasion. And a prosecutor who misstates the law would constitute or would be engaged in a state law error. But the fact of the matter is that no strong constitutional argument was made in the state courts. In fact, there was sort of a combination argument that the prosecutor said something wrong, agreed, the trial court should have fixed it, possibly. Didn't, right? There was no corrective instruction here. There was none because the court- Instructed them the other way. It's hard to tell what the judge would have said because as the California Court of Appeals said, it's easy to state the law in California. That is, mere preparation is not enough. There has to be a direct act that essentially puts the plan into action to commit the crime. And maybe it doesn't matter much, but the Superior Court judge said, and I think the record shows pretty clearly he was in the process of drafting a corrective instruction when the verdict came in. They were, yes. And he was going to instruct them in a way that was actually incorrect. The jury never heard that, but they didn't get a corrective instruction or even a response from the court, right? Correct. And up until that point, the state court instructions, as the state court found, were correct. Yes, but they didn't go to this temporal element at all. And in a different case, I think your argument might be more persuasive to me. But in fairness, I'd like to give you a chance to respond to this. It's always a little hard to read the record. You know, you feel like you're reading tea leaves a little bit. But in this case, it seems that the defense was all about this temporal component. So I'm looking at the, and I'm going to paraphrase a little bit if I might, the defense attorney's argument in closing, quote, or roughly quote, there are cases where the law aligns with justice and morality. This is a case where that might not be the situation. Like it or not, the law is on Mr. Deck's side. Kind of an extraordinary closing, really. And then he went on to talk about this temporal component. The fact that the jury, and then, of course, in rebuttal, the prosecutor made what you've, I think, candidly conceded was an error in a statement of the law. And the fact that the jury sent this question out tells me the jury was paying attention. They knew that was really important as an element in this case. Correct, Your Honor. I don't disagree with that at all. I guess what I would say is a couple of things. First of all, you know, when the facts are against you, as they were badly against Mr. Deck, you sort of have to argue law. So he argues law. The facts were badly against him, and the law was against him, because I think it was clear to the jury that if there had been any touching, state law makes any touching with the proper intent the crime. Any touching that night would have been a crime. Why is that? Mr. Deck was under a powerful sexual obsession. Over the course of six days, he had groomed this girl. So if we agree with you, forgive me for interrupting, but your time is ticking away. If we agree with you, then are you telling me that what we should do is decide which of the alternative arguments the jury found, or what is the point you're making? Well, my point is that no one, the state court rejected the presence of constitutional error. The district court said the prosecutor's argument was not misconduct under Darden. That's at one excerpt of record, page 21. No one has found a constitutional error. The state court didn't address that except in the context of Strickland, because that's largely how it was argued. Has the U.S. Supreme Court ever found that a prosecutor's erroneous statements of law constituted a due process violation of a constitutional magnitude? I don't know the answer to that, Your Honor, but I don't think so. And that's because it's very difficult for a mere misstatement by the prosecutor to overcome the correct instruction by the court. But wait a minute. But wait. Before you leave Judge Smith's question, you just agreed. I don't want to put words in your mouth. I think you agreed this was an element, this temporal component in this case, and the instructions don't speak to it. The instructions simply say that he must have put his plan into action. His plan was in action. He was driving to see her. But the point is when. It's the temporal component, right? That's what the jury was asking about. And California law says that if the intention is clear, that it's easier to find an attempt early in the cause, in the stage of the plan. So his phone conversation to her, his e-mails to her, those were simply planning. The plan wasn't in action. Once he departed and went to meet with her, and he certainly intended to touch her that night, and his communications had talked about kissing. Well, he said no kissing or anything. I've got a cold. He said one time no kissing. But he also said, we'll go to your house and watch television. So this plan wasn't just to meet in the park. He was hopeful. He was eager to get into her home. He knew perverted justice. He was careful. But he was under such a powerful sexual compulsion that he was still willing to go. Any touching would have constituted the crime. Well, I think I've lost my train. But there has been no constitutional error in this case. There's no finding of constitutional error, perhaps. But certainly for that question even to come up on habeas, Petitioner would have had to exhaust it. He did. If you look at his appellate's opening brief and his petition for review in the California Supreme Court, he sort of drives by the due process element. It turns out to be in a couple of footnotes. In the AOB, it's at pages 40 to 50. And we didn't, I'm sorry, we didn't include these in the supplemental. You're answering a different question than I had in mind. I mean, I'm just saying the issue was presented to the California courts. And we have the situation where the California Court of Appeals says the error doesn't designate whether it's constitutional error or not, but doesn't really need to because it finds it's harmless. So at the end of the day, we can argue about whether the error is constitutional or not. But isn't the focus harmlessness really on underbreak? Well, I mean, certainly that's part of the... Is your primary argument that there was no constitutional error? Two arguments, Your Honor. The first is that there is no constitutional error. And as Judge Smith was saying, there's got to be a constitutional error for there to be habeas corpus relief. But I agree that harmlessness is sort of tied into the due process claim. And would say that, you know, the prosecutor's brief misstatement of law, incorrect statement of law, was prosecutor error under the California law, but not under Darden. But it is harmless because the jury was properly instructed. The jury had a question, lost a member, were reconstituted. They were told clearly by the trial court, start over. And if they did start over, I believe they would have begun by looking at page 1 of the jury instructions that were given to them. And on page 1 of the jury instructions, it's second volume of the excerpts of record of page 651. In the third paragraph, it said, if you believe the attorney's comments on the law conflict with my instructions, you must follow my instructions. And his instructions didn't answer the question. They did answer the question. They answered the question because they said he has to be engaged in his plan to commit the crime now. Engaged in the plan. Not planning to do something in the future. That's preparation. In the distant future. He had to be on his way to touch her with sexual intent. And the evidence was abundantly clear that that's why he went there. He could not have touched her without sexual intent under the facts of this case. The instruction that the judge gave to the court when they started over, if you will. Yes, Your Honor. Was this. I know that there was a previous question sent out by the foreperson, juror number 9, in light of the fact that I've given you this instruction that you have to start all over again. Disregard past deliberations. You need to follow that instruction. If you have any further questions that you want answered once you start deliberating with the jury, send that out in the question format and we'll get it answered for you. And I think it's fair to say he was expecting them to. He was drafting the response. Yes, Your Honor, I agree with that. And I wonder about this. I want to give you a chance. My first read of this, had I been on the jury, might have been to understand that if I had any other questions they were going to be answered, but this one wasn't going to be. I think that is a plausible but incorrect interpretation. Why is that? Because he said start over. We begin anew. If you have questions, ask them of me. Was this only given orally, the start over instruction? Oh, the start over instruction I believe was given only orally. Yes, Your Honor. Thank you. Okay. Any further questions? Thank you. Thank you, Your Honor. Put on a minute for rebuttal. I'll talk very fast. In response to Your Honor's inquiry, I would say what are we doing here if we haven't raised a constitutional question? They put in their brief that the question for review is, this is on page one, whether the prosecutor's misconduct and rebuttal had a substantial injurious impact. Well, you only get to that question if there's a constitutional error. In answer to Judge Milan-Smith's issue, has there ever been a Supreme Court case that's held a due process violation for argument Caldwell v. Mississippi, which is cited in the material where the prosecutor told the jury, well, don't worry about your verdict of death here because the court of appeal will figure it out. And the Supreme Court said that was constitutional. In Donnelly and Darden, the court, while holding either the error, the prosecution's misconduct erroneous but harmless or not erroneous, they said if it touches on a constitutional right, that is a significant factor to look at in terms of the prejudice. And here, the constitutional right was the defendant's right to be tried on the elements of the offense. It couldn't be more fundamental to due process. And that's why the court of appeal said that the argument of the prosecutor, quote, negates the essential element necessary to constitute an attempt. And that's at ER1, page 45. And with that, at a minimum, under McEnach, if there's equipoise in prejudice, the court's duty is to grant relief. And I think we crossed that threshold. Thank you very much. Thank you both for your arguments this morning. The case just heard will be submitted for decision.
judges: Thomas, Smith, Christen